**CONNECTICUT ACTION NOW, INC., et al., Plaintiffs,**

v.

**ROBERTS PLATING COMPANY, Inc., Defendant.**

**Civ. No. 14193.**

United States District Court, D. Connecticut.

June 21, 1971.

David B. Beizer, New Haven, Conn., for plaintiffs.

Charles J. Negaro, of Weisman & Weisman, Waterbury, Conn., for defendant.

TIMBERS, Chief Judge.

Plaintiffs seek (1) in a *qui tam* action, recovery of an informer's one-half interest in the penalty prescribed for discharging refuse into a navigable water of the United States in violation of the Rivers and Harbors Act of 1899, 33 U.S.C. §§ 407 and 411 (1964); and (2) injunctive relief to prevent future discharge of refuse.

Defendant before answering has moved to dismiss, *inter alia*, for lack of jurisdiction over the subject matter and for failure to state a claim upon which relief can be granted. Rule 12(b)(1) and (6), Fed.R.Civ.P. For reasons stated below, the Court grants defendant's motion to dismiss.

Plaintiff Connecticut Action Now, Inc. is a private, non-profit, Connecticut corporation whose purpose is to eliminate all forms of pollution. Plaintiffs David B. Beizer and Rita L. Bowlby are Connecticut citizens and owners of property adjoining Fulling Mill Brook, a tributary of the Naugatuck River which is alleged to be a navigable river of the United States flowing into Long Island Sound. Defendant Roberts Plating Company, Inc. is a Connecticut corporation which allegedly has discharged refuse into Fulling Mill Brook.

The allegations of the complaint are taken as true for purposes of the instant motion to dismiss.

Jurisdiction is invoked pursuant to 33 U.S.C. §§ 407 and 411 (1964) and 28 U.S.C. §§ 1331, 1355 and 2461 (1964).

The Rivers and Harbors Act of 1899 provides that it shall be unlawful to discharge "any refuse matter of any kind or description . . . into any navigable water of the United States, or into any tributary of any navigable water . . . ." 33 U.S.C. § 407. The penalty for such wrongful discharge of refuse is set forth in 33 U.S.C. § 411:

"Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction."

Plaintiffs as informers seek to enforce 33 U.S.C. § 411 through the instant *qui tam* action.

The right of informers to instigate litigation on their own, and to collect their interest in a fine or penalty, has been an integral part of the legal history of this nation. See United States ex rel. Marcus v. Hess, 317 U.S. 537

(1943); Marvin v. Trout, 199 U.S. 212 (1905). In Marvin v. Trout, *supra*, at 225, the Supreme Court stated that "[t]he right to recover the penalty or forfeiture granted by statute is frequently given to the first common informer who brings the action, although he has no interest in the matter whatever except as such informer." The *qui tam* action has been recognized in this Circuit. See United States ex rel. Pressprich Son Co. v. James W. Elwell & Co., 250 F. 939 (2 Cir.), cert. denied, 248 U.S. 564 (1918).

Recognition of the *qui tam* right of action appears to have been confined to lawsuits in which the informer seeks to recover statutory fines or penalties which are *civil* in nature. In United States ex rel. Marcus v. Hess, *supra*, the Supreme Court sustained a *qui tam* action pursuant to 31 U.S.C. § 231, a statute which provides for civil forfeiture and damages for fraud perpetrated upon the federal government. In Marvin v. Trout, *supra*, the Supreme Court permitted a *qui tam* suit by informers to collect certain sums of money lost to gamblers; the state statutes there involved (see 199 U.S. at 212, n. 1) clearly provide that the *qui tam* suit is a "civil action"; and the penalties provided are civil in nature. In United States ex rel. Pressprich Son Co. v. James W. Elwell & Co., *supra*, Judge Learned Hand noted that a *qui tam* action could be brought under a statute which provided for fines upon a shipper's refusal to issue a clear bill of lading. The applicable statute, 46 U.S.C. § 194, provides that civil fines and penalties are to be imposed for violation of the Act.

Plaintiffs in the instant case were unable to cite any case which sustained a *qui tam* action to collect a *criminal* fine

or penalty. And the Court has been unable to find such a case.

■ A reading of 33 U.S.C. § 411 makes it abundantly clear that § 411 is a criminal statute with criminal penalties: (i) anyone who violates the Act [e. g. § 407] is "guilty of a misdemeanor"; (ii) the fine provided may be imposed only after "conviction" for the violation; and (iii) the informer's one-half interest in the fine is limited to cases in which "information [given by the informer] . . . shall lead to conviction". In Durning v. ITT–Rayonier, 325 F.Supp. 446 (W.D.Wash.1970),[1] the court concluded that:

> " . . . Congress in enacting this criminal statute [33 U.S.C. § 411] intended to reward an informant for information leading to the conviction of the wrongdoer and not to provide a means by which an informant may proceed to recover against the violator of the criminal statute the amount he might otherwise receive from a fine which 'might' be imposed after conviction of the defendant in a criminal proceeding."

An informer may not, on his own and prior to conviction, institute a *qui tam* action under 33 U.S.C. § 411 to collect a one-half interest in a fine which is to be paid only after the information given leads to a conviction.

■ One of the asserted grounds for jurisdiction in the instant case is 28 U.S.C. § 2461:

> "Whenever a civil fine, penalty or pecuniary forfeiture is prescribed for the violation of an Act of Congress without specifying the mode of recovery or enforcement thereof, it may be recovered in a civil action."[2]

1. See 2 ERC 1170 (October 5, 1970).

2. 28 U.S.C. § 2461 was enacted to provide a basis for the recovery of a civil fine or forfeiture when the statute does not specify the mode of recovery. Plaintiffs point out that § 2461 has been utilized to effect the recovery of a fine

which is prescribed in a criminal statute. See, e. g., 14 U.S.C. § 638 (1964). However, in each such situation (where the criminal penalty could be enforced by either debt or information) there was no provision for an informant's right to recover a fraction of the criminal penalty in a *qui tam* action.

The Reviser's Note to § 2461 concludes that "[i]f the statute contemplates a criminal fine, it can only be recovered in a criminal proceeding under the Federal Rules of Criminal Procedure, after a conviction." [3]

The Court holds that 33 U.S.C. § 411 provides for a criminal fine which can be enforced only in a criminal proceeding; and that the informer's one-half interest in the fine so recovered can be sought only after conviction.

In dismissing plaintiffs' *qui tam* action pursuant to 33 U.S.C. § 411, the Court notes that the Rivers and Harbors Act makes other provisions for its enforcement. Section 413 directs that the Department of Justice "shall conduct the legal proceedings necessary to enforce the [statute]" and that United States attorneys shall "vigorously prosecute all offenders" of the Act "whenever requested to do so by the Secretary of the Army or by [other officials]." But § 413 makes no provision for commencement of a *qui tam* action under § 411 prior to conviction in a criminal proceeding. See Reuss v. Moss-American, Inc., 323 F.Supp. 848 (E.D.Wis.1971), citing: Bass Anglers Sportsman's Society of America v. U. S. Plywood-Champion Papers, Inc., 324 F.Supp. 302 (S.D.Tex.1971); Bass Anglers Sportsman's Society of America v. United States Steel Corp., 324 F.Supp. 412 (N.D.Ala.1971); Durning v. ITT–Rayonier, *supra.*

As an alternative ground for relief, plaintiffs seek an injunction to prevent future discharge into Fulling Mill Brook. They argue that defendant's acts have deprived them of certain personal and property rights, all in contra-

vention of the Fifth Amendment. Plaintiffs assert that 28 U.S.C. § 1331 confers jurisdiction upon this Court with respect to their claim for injunctive relief.

The Court holds that the cause of action based on § 1331 jurisdiction is not well founded. Plaintiffs have not pleaded, and it is doubtful that they could prove, the requisite jurisdictional amount.[4]

Plaintiffs' arguments in support of the jurisdictional basis for their claims to injunctive relief are premised upon citations to recent "environment" cases which have broadened the concept of standing. See, e. g., Scenic Hudson Preservation Conference v. F.P.C., 354 F.2d 608 (2 Cir. 1965), cert. denied, 384 U.S. 941 (1966); Citizens To Preserve Overton Park, Inc. v. Volpe, Secretary of Transportation, 401 U.S. 402 (1971). In each case cited, however, plaintiffs therein were seeking review of some *official* action or decision. For example, in Citizens To Preserve Overton Park, Inc. v. Volpe, Secretary of Transportation, *supra*, plaintiffs challenged the Secretary of Transportation's decision to construct a highway through a public park. In each case, moreover, plaintiffs were able to maintain the action under either the Administrative Procedure Act, 5 U.S.C. § 701 et seq., or pursuant to a specific statutory provision for relief to persons aggrieved by some official action under the statute involved. Each case cited by plaintiffs not only challenges some official action, but there existed independent jurisdictional grounds to maintain the lawsuit.[5] In the instant case, defendant is a private corporation; no of-

---

3. The jurisdictional counterpart to § 2461 is found in 28 U.S.C. § 1355 (1964).

4. Since the Court has held that a *qui tam* action under § 411 will not lie, plaintiffs may not use the proposed fine under § 411 as an amount in controversy.

5. See also, Environmental Defense Fund, Inc. v. Hardin, 428 F.2d 1093 (D.C.Cir. 1970) (plaintiffs sought review of the Secretary of Agriculture's failure to take

action on a petition to restrict the use of DDT; jurisdiction based on the Administrative Procedure Act, 5 U.S.C. § 702 (Supp. V, 1969)); Citizens Committee For Hudson Valley v. Volpe, 425 F.2d 97 (2 Cir. 1970) (citizens group obtained an injunction to prevent the Army Corps of Engineers from dredging and filling the Hudson River; jurisdiction likewise based on the Administrative Procedure Act).

ficial action or decision is challenged;[6] and the only asserted jurisdictional basis for the injunctive relief sought is 28 U.S.C. § 1331, which the Court holds does not furnish a jurisdictional basis herein.

In view of the Court's action in dismissing the action on the grounds stated, it is neither necessary nor appropriate to reach other grounds for dismissal urged by defendant.

To summarize, the Court concludes as follows:

(1) There is no right, prior to conviction, to maintain a private *qui tam* action under 33 U.S.C. § 411 to recover criminal penalties for unlawful discharge into navigable waters.

(2) The Court lacks jurisdiction under 28 U.S.C. § 2461 to entertain an action to recover a criminal fine or forfeiture.

(3) Plaintiffs have failed to plead or prove the requisite jurisdictional amount to maintain the action under 28 U.S.C. § 1331.

### ORDER

Ordered that defendant's motion to dismiss the complaint is granted, with costs.

6. Plaintiffs' complaint appears to challenge the United States Attorney's inaction in failing to initiate proceedings against defendant under 33 U.S.C. §§ 411 and 413. Plaintiffs fail to plead any jurisdictional basis for challenging such asserted official inaction. And the Court knows of none.